## PIERCE *vs.* KIMBALL.

To constitute a statute a public act, it is not necessary that it should be equally applicable to all parts of the State. It is sufficient if it extends to all persons within the territorial limits described in the statute.

It is within the constitutional powers of the legislature to pass laws regulating certain branches of trade or manufactures in particular districts only; as well as to establish local tribunals.

Therefore the Statute of *March* 9, 1832, which provides for the survey of lumber in the county of *Penobscot* in a particular manner, and for the appointment of a Surveyor general for that county, by the Governor and Council, forbiding the sale or purchase of lumber in that county not surveyed and marked by him or his deputies according to the peculiar provisions of that statute, is not an unconstitutional act.

THIS was a *qui tam* action, to recover a penalty under the Statute of *March* 9, 1832, (Private Statutes *ch.* 283.) regulating the survey of lumber in the county of *Penobscot*, for surveying a quantity of lumber, the defendant not being the surveyor general nor one of his deputies mentioned in that act. In a case stated by the parties, it was agreed that the defendant was duly chosen by the inhabitants of *Bangor*, as one of their surveyors of lumber, under the general statute of 1821, and that as such he surveyed the lumber in question. And it was further agreed that if the act of 1832 was constitutional, and if the defendant, being a surveyor chosen by the town, was liable to its penalties, judgment should be rendered for the plaintiff, upon default.

*Allen* and *Kent*, for the defendant, argued that the act of 1832 was unconstitutional. It repeals a general law as to one county only; and enacts penalties and imposes obligations on the people of that county, unknown in other parts of the State. It is not a rule for all, binding on all. Laws affecting the rights and duties of the people should be uniform and universal in their character and application. It is this character which distinguishes a republic from despotic government. A different principle would enable a corrupt administration to coerce an obnoxious town or class of people, by the most flagitious oppression. *Portland Bank v. Apthorp*, 12

Pierce *v.* Kimball.

*Mass.* 252 ; *Lunt's case,* 6 *Greenl.* 412 ; *Lewis v. Webb,* 3 *Greenl.* 336 ; *Holden v. James,* 11 *Mass.* 396 ; *Picquet's case,* 5 *Pick.* 65 ; *Stoughton v. Baker,* 4 *Mass.* 522 ; *Little v. Frost,* 3 *Mass.* 106.

*J. McGaw,* for the plaintiff.

The opinion of the Court was delivered at a subsequent term, by

MELLEN C. J. For the maintenance of this action the plaintiff relies on the sixth section of the act passed on the ninth day of *March,* 1832, entitled, " An Act regulating the survey of lumber in the county of *Penobscot.*" That part of the section on which the action is founded, is in these words :—" And if any person, not being the Surveyor general or one of his deputies, shall take an account of, or survey any of the aforesaid descriptions of lumber, sold or purchased as aforesaid, he shall forfeit not less than two, nor more than ten dollars for every ton of timber and every thousand feet of said other timber which he shall survey or take an account of." The constitutionality of the act, and more especially of the above provision, taken in connexion with certain other parts of the act, is denied by the defendant ; and on the assumed ground of unconstitutionality, the defence has been placed. The first section provides that the Governor with advice of Council, may appoint some suitable person to be Surveyor general of lumber in the county of *Penobscot,* who shall reside at *Bangor,* and appoint not less than ten deputies. The second and third sections require a division of lumber into four classes, and prescribe the mode of surveying. The fourth directs the mode of marking the several kinds ; and requires that all lumber shall be received and sold according to such marks, and prohibits all persons from selling or purchasing any such lumber, within said county, unless surveyed and marked as aforesaid, excepting such as is purchased for home consumption. The sixth section contains, in addition to the above quoted clause on which the present section is founded, the following provision, viz. " that if any person shall sell or purchase any of the aforesaid descriptions of lumber, not surveyed and marked as this act pro-

vides, he shall forfeit one dollar for every ton of timber or every thousand feet of said other lumber sold and purchased as aforesaid." The eleventh section declares " that all acts and parts of acts, inconsistent with the provisions of this act, be and the same hereby are repealed." Our constitution, part 3d, *art.* 4, *sec.* 1, declares that the Legislature shall have " full power to make and establish all reasonable laws and regulations for the defence and benefit of the people of this state ; not repugnant to this Constitution, nor that of the United States." One objection urged against the act in question is that it is an unreasonable law, that it was not made for the benefit of the people at large, but only for the county of *Penobscot*, and the regulation of the peculiar interests of that county ; and of course, is partial in its character and operation. That if it is a beneficial law, its benefits ought not to be confined to a small designated portion of the State ; and, on the contrary, if it is restrictive in its operation, subjecting the citizens of the county of *Penobscot*, to burdens which the other counties in the State are not obliged to bear, that then it is an unjust and unconstitutional law. It is true that public acts are usually general in their character and operation, and equally applicable in all parts of the State. There are other acts which are considered as public acts, of which all persons are bound to take notice upon their peril, and yet they are local, because the violation of them is and must be local. Thus in the case of *Burnham v. Webster*, 5 *Mass.* 266, which was an action of debt for taking fish near the shore in *Scarborough*, within certain limits prescribed by Statute, contrary to its prohibitions, *Parsons C. J.* says, " We are all of opinion that the statute referred to is a public statute : it is obligatory upon all the citizens, and they must notice it at their peril. Indeed all the laws regulating the taking of fish are made for the public benefit, to preserve the fish, and are public statutes. The violation of all such statutes must necessarily be confined to those ponds, rivers, streams and other places to which the statute prohibitions apply ; but the prohibitions themselves are general or universal, extending to all who shall dare to transgress, wherever residing. In the case of *Commonwealth v.*

*Worcester*, 3 *Pick*. 462, the court say, "surely the power of the legislature to pass a local law cannot be questioned.   It is not only the right, but the duty of that branch of the government so to vary the provisions of law, as to meet, so far as is practicable, the peculiar exigencies of every portion of the community." So in *Wales v. Belcher*, 3 *Pick*. 508, the court adjudged the police court of *Boston* as constitutionally established ; though by the act establishing it, the powers of justices of the peace of the county of *Suffolk* were taken away and transferred to that court.   The Municipal Court and the *Boston* Court of Common Pleas, were also established by local laws, while all other parts of the Commonwealth were under the jurisdiction of courts differently organized and possessing different powers.   So, in this State, a similar principle has been acted upon in the establishment of the Municipal Court in *Portland ;* a court clothed with a special jurisdiction, and exercising all those judicial powers which justices of the peace in that town formerly exercised ; but which powers they are now prohibited from exercising under a penalty, in the same manner as the surveyors of lumber, chosen by towns in the county of *Penobscot,* are prohibited by the act of 1832, from surveying and marking lumber within the limits of that county.   So towns have authority, by the general law of 1821, to elect inspectors of lime ; yet the same act authorises the Governor, with advice of Council, to appoint inspectors in the towns of *Thomaston, Camden* and *Warren ;* and those towns are deprived of the power of choosing such officers.   Is the act unconstitutional on the ground that it is not only local in its operation, but in restraint of trade in the county of *Penobscot,* while the inhabitants of all the other counties in the State, and all persons transacting the business of trade in those counties, in the various species of lumber, are free from similar restraints?   In reply to this question it may be said that the only variance between the survey required by the general law of 1821, and the act of 1832 is, that by the latter law, a certain classification of the different kinds of lumber is to be made in the survey ; and the several classes are to be distinguished by the marks of the surveyor ; but the same qual-

ity of timber is required by both laws to entitle it to a survey for exportation. There is more form in distinguishing the varieties composing a large lot of timber ; but the quality of the aggregate must be the same in both cases, to answer the requisitions of both statutes. In this respect, then, there is no restraint of trade ; the only change has reference to the person or persons empowered to make the survey. The fees to be paid are the same. By a general law of Massachusetts, of *March* 8, 1785, it is declared to be an indictable offence to sell any diseased, corrupted, contagious or unwholesome provisions, punishable by fine, imprisonment or pillory ; and by a local act, passed *June* 20, 1799, it is enacted, " that if any person shall offer for sale in the town of *Boston*, or have in his possession any tainted or putrid salted meat or pickled fish, he shall forfeit two dollars per barrel." By the same act, the *Boston* board of health were specially empowered to require vessels to perform quarantine, under a severe penalty. Is not this last statute, at least in the last named provision, in restraint of trade, though the preservation of health was the motive in passing it ? By the act of 1821, one moiety of all fines and penalties was to belong to the town where an offence should be committed; by the act of 1832, such moiety is to go to the county of *Penobscot*. This furnishes no sound objection to the last law ; for it can have no effect as to vested rights ; they are not vested in the town till recovery of judgment for such penalties. By the act of 1821, such penalties are to be recovered by suit, or by a civil action; by the act of 1832, they may be recovered by a civil action or by indictment. Neither does this furnish any valid objection ; for the provision is as general as the prohibitions, which, as has been before observed, extend to all persons, of whatever place they may be inhabitants. Had those prohibitions and penalties extended to no other persons than the inhabitants of the county of *Penobscot*, the case would seem different in principle, and perhaps liable to immovable objections. From the view we have thus taken of the act in question, it is by no means apparent that it was intended to confer on the inhabitants of the county of *Penobscot* any peculiar privileges, or subject them to any

peculiar penalties, privations or disabilities. Nothing appears which indicates that the law was not intended as a public benefit, of which all the citizens of the State, as well as others, might equally participate ; and that there were circumstances, rendering the provisions of the act, in that section of the State, where such immense quantities of lumber are annually manufactured and sold for exportation, of peculiar advantage to all connected in so extensive a concern.

We have had several occasions for observing or considering the effect of Resolves, passed for the express purpose of granting some especial privilege to certain individuals, to which, by the standing laws of the State, they were not entitled ; as appears in the cases of *Holden v. James, ad'r.* and *Lewis v. Webb,* cited by the counsel for the defendant ; and also in *Durham v. Lewiston,* 4 *Greenl.* 140 ; in all of which cases the Legislature was pronounced to have exceeded its constitutional powers. In the above case of *Holden v. James, adm'r.* a learned opinion was delivered by *Jackson J.* in which the subject of such legislation is luminously considered. He observes, " It is manifestly contrary to the first principles of civil liberty and natural justice, and to the spirit of our constitution and laws, that any one citizen should enjoy privileges and advantages, which are denied to all others under like circumstances ; or that any one should be subjected to losses, damages, suits or actions, from which all others, in like circumstances are exempted." The legislatures of *Massachusetts* and of this State, have repeatedly recognized the distinction between such resolves, granting personal privileges or exemptions to certain individuals by name, and laws of a local character of the kind before mentioned in this opinion. The former are considered as unconstitutional ; the latter are not so considered.

But it has been urged that if such local legislation as that which is manifested in the act in question, is to be sanctioned, it will lead to dangerous consequences, and may be used for purposes of oppression or partizan management. The answer to this objection is, that the great political interests of the people are secured by express

constitutional provisions. Our rulers must be elected in certain specified modes, which consequently, must be uniform and general. The term of office is subject to distinctly prescribed limitations ; and the security of life, liberty, reputation and property, depends on principles and sanctions to be found in our constitution ; and when an act of the Legislature violates these or jeopards the unquestioned rights of the citizens, a court of law is bound to declare such an act a nullity, and decline carrying it into execution. All laws, however, enacted by the Legislature, are presumed to be constitutional. The act under consideration does not, certainly with clearness, appear to be otherwise. We conclude with the language of *Marshall* Chief Justice, in the case of *Dartmouth College v. Woodward.*—— "On more than one occasion, this court has expressed the cautious circumspection with which it approaches the consideration of such questions ; and has declared, that in no doubtful case, would it pronounce a legislative act to be contrary to the constitution." The action therefore is maintained. A default is to be entered and judgment thereon, for twenty-one dollars damages and costs.