WHITE *v.* BRACELIN.

1. STATUTES — INTOXICATING LIQUORS — CONSTITUTIONAL LAW —
   SPECIAL LEGISLATION.

   Act No. 663, Local Acts 1905, making it a penal offense to keep
   a saloon within 100 rods of any public school in Berrien
   county, is not unconstitutional as private legislation, infring-
   ing constitutional rights of persons residing in Berrien county.

2. CONSTITUTIONAL LAW — INTOXICATING LIQUORS — EQUAL PRO-
   TECTION OF LAWS.

   Act No. 663, Local Acts 1905, making it a penal offense to keep
   a saloon within 100 rods of any public school in Berrien
   county, does not violate the fourteenth amendment of the
   Constitution of the United States.

Certiorari to Berrien; Coolidge, J. Submitted May 1,
1906. (Calendar No. 21,659.) Decided May 24, 1906.

Mandamus by Charles E. White, prosecuting attorney,
to compel Frank Bracelin, justice of the peace, to issue a
warrant for violation of the liquor law. There was an
order granting the writ, and respondent brings certiorari.
Affirmed.

*Charles E. White* (*George W. Bridgman,* of counsel),
for relator.

*James O'Hara,* for respondent.

HOOKER J. At its 1905 session the legislature passed
a law making it a penal offense for any person to keep a
saloon where spirituous or intoxicating liquors are sold
within 100 rods of any public school in Berrien county.
See Act No. 663, Local Acts 1905.

The respondent, a magistrate, was asked to issue a war-
rant against a person charged with violating that law, but
refused to do so, whereupon he was proceeded against by

mandamus to compel such action. The circuit court ordered a peremptory writ to issue, and the cause is now before us on certiorari.

The only question in the case is whether the act is constitutional. It is too late to seriously question the power of the legislature to prohibit the manufacture or sale, in this State, of spirituous or intoxicating liquor. Since 1859 an uninterrupted line of cases have so held. We need not consider the arguments, that this legislation infringes the right of "incorporated villages and cities to maintain saloons," without the wishes of the inhabitants of the locality being considered, or what the effect will be upon owners of orchards and vineyards. The only questionable point is whether this act, being legislation pertaining to a portion of the State, is private legislation of a class which infringes constitutional rights of persons residing in Berrien county. In discussing the question of "unequal or partial legislation," Mr. Justice COOLEY has said:

"Laws public in their objects may, unless express constitutional provision forbids, be either general or local in their application; they may embrace many subjects or one, and they may extend to all citizens, or be confined to particular classes, as minors or married women, bankers or traders, and the like. The authority that legislates for the State at large must determine whether particular rules shall extend to the whole State and all its citizens, or, on the other hand, to a subdivision of the State or a single class of its citizens only. The circumstances of a particular locality, or the prevailing public sentiment in that section of the State, may require or make acceptable different police regulations from those demanded in another, or call for different taxation, and a different application of the public moneys. The legislature may therefore prescribe or authorize different laws of police, allow the right of eminent domain to be exercised in different cases and through different agencies, and prescribe peculiar restrictions upon taxation in each distinct municipality, provided the State Constitution does not forbid. These discriminations are made constantly; and the fact that the laws are of local or special operation only is not supposed to render them obnoxious in principle. The

legislature may also deem it desirable to prescribe peculiar rules for the several occupations, and to establish distinctions in the rights, obligations, duties, and capacities of citizens. The business of common carriers, for instance, or of bankers, may require special statutory regulations for the general benefit, and it may be matter of public policy to give laborers in one business a specific lien for their wages, when it would be impracticable or impolitic to do the same for persons engaged in some other employments. If the laws be otherwise unobjectionable, all that can be required in these cases is, that they be general in their application to the class or locality to which they apply; and they are then public in character, and of their propriety and policy the legislature must judge." Cooley on Constitutional Limitations (6th Ed.), p. 479.

This law is general in the sense that the author indicates. It applies to every one who lives or comes within the State. It is not limited to citizens of Berrien county. It is true that it prohibits saloons only in that county, and it may be that there is not the same necessity for that particular prohibition elsewhere. Innumerable instances of such legislation can be found. All of our local option laws involve this principle, and it is a common thing for the legislature to pass special acts, establishing exceptional municipal bodies, such as cities, villages, and school districts. A recent case sustained such action in relation to a school district in Hillsdale county. See *Attorney General, ex rel. Kies*, v. *Lowrey*, 131 Mich. 639, affirmed 199 U. S. 233.

Again, the legislature has passed many laws regulating or restraining the taking of fish in particular lakes or streams. All of these laws apply to all persons, though they apply to limited territory. It is manifest that the necessity for a law may depend upon local conditions, of which the legislature must judge. Among the cases apropos to the subject are *Haskel* v. *City of Burlington*, 30 Iowa, 232, and *Iowa Railroad Land Co.* v. *Soper*, 39 Iowa, 115.

In *Harrison* v. *Gordy*, 57 Ala. 49, it was held that "the legislature may, by a special or local act, prohibit

the sale of vinous or spirituous liquor, within a town and territory adjacent thereto."

In *Block* v. *State*, 66 Ala. 493, a law prohibiting the sale of liquor within a specified distance from two churches (naming them) situated in different counties was held valid.

In *State* v. *Berlin*, 21 S. C. 292, a law which permitted the sale of spirituous liquors in cities and villages, and prohibited it elsewhere in the State, was attacked, both as violating the State Constitution and the Fourteenth Amendment. The court held it valid, saying:

"The practical question, therefore, presented in this case, is whether the legislature can, in the exercise of the police power, prescribe different regulations for the sale of spirituous liquors in different localities within its borders. It is quite clear that regulations which might prove very effective in one locality, might be found very inefficient in another, and it would seem, therefore, that to render the exercise of this admitted power most effective the regulations should be adapted to the wants and conditions of the different localities to which they are to be applied."

Again, in Georgia (*Howell* v. *State*, 71 Ga. 224) a law was sustained forbidding such a sale within two miles of two specified academies, in a particular county. Both of these cases refer with approval to the language of Mr. Justice COOLEY above quoted. See, also, *Marmet* v. *State*, 45 Ohio St. 63; *State* v. *Baltimore County Com'rs*, 29 Md. 516; and *Unity* v. *Burrage*, 103 U. S. 455.

The claim that such statutes do not violate the Fourteenth Amendment is equally well supported. Thus in *Missouri* v. *Lewis*, 101 U. S. 31, the court said:

"We might go still further and say, with undoubted truth, that there is nothing in the Constitution to prevent any State from adopting any system of laws or adjudicature it sees fit for all or any part of its territory. If the State of New York, for example, should see fit to adopt the civil law and its method of procedure for New York City, and the surrounding counties, and the common law and its methods of procedure for the rest of the State,

there is nothing in the Constitution of the United States to prevent its doing so. This would not, of itself, within the meaning of the Fourteenth Amendment, be a denial to any person of the equal protection of the laws. If every person residing or being in either portion of the State should be accorded the equal protection of the laws prevailing there, he could not justly complain of a violation of the clause referred to. For, as before said, it has respect to persons and classes of persons. It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances.

"The Fourteenth Amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies. Great diversities in these respects may exist in two States separated only by an imaginary line. On one side of this line there may be a right of trial by jury, and on the other side no such right. Each State prescribes its own modes of judicial proceeding. If diversities of laws and judicial proceedings may exist in the several States without violating the equality clause in the Fourteenth Amendment, there is no solid reason why there may not be such diversities in different parts of the same State. A uniformity which is not essential as regards different States cannot be essential as regards different parts of a State, provided that in each and all there is no infraction of the constitutional provision. Diversities which are allowable in different States are allowable in different parts of the same State. Where part of a State is thickly settled, and another part has but few inhabitants, it may be desirable to have different systems of judicature for the two portions—trial by jury in one, for example, and not in the other. Large cities may require a multiplication of courts and a peculiar arrangement of jurisdiction. It would be an unfortunate restriction of the powers of the State government if it could not, in its discretion, provide for these various exigencies.

"If a Mexican State should be acquired by treaty and added to an adjoining State, or part of a State, in the United States, and the two should be erected into a new State, it cannot be doubted that such new State might allow the Mexican laws and judicature to continue unchanged in the one portion, and the common law and its

corresponding judicature in the other portion. Such an arrangement would not be prohibited by any fair construction of the Fourteenth Amendment. It would not be based on any respect of persons or classes, but on municipal considerations alone, and a regard to the welfare of all classes within the particular territory or jurisdiction."

Again, in *Unity* v. *Burrage*, 103 U. S. 455, it was said:

"The courts said: 'Statutes incorporating counties, fixing their boundaries, establishing court-houses, canals, turnpikes, railroads, etc., for public uses, all operate upon local subjects. They are not for that reason special or private acts.' [*West* v. *Blake*, 4 Blackf. (Ind.) 234.] In this country the disposition has been on the whole to enlarge the limits of this class of public acts, and to bring within it all enactments of a general character, or which in any way affect the community at large. *Pierce* v. *Kimball*, 9 Me. 54; *Inhabitants of New Portland* v. *Inhabitants of New Vineyard*, 16 Me. 69; *Inhabitants of Gorham* v. *Inhabitants of Springfield*, 21 Me. 58; *Burnham* v. *Webster*, 5 Mass. 266; *Com.* v. *McCurdy*, 5 Mass. 324; *Com.* v. *Inhabitants of Springfield*, 7 Mass. 9; Bac. Abr. 'Statute,' F. On these and many other authorities which might be cited, we think that the act by which the issue of the bonds sued on was authorized is a public act, of which the courts are bound to take judicial notice, and that it need not be specially pleaded."

In *Davis* v. *State*, 68 Ala. 58, it was held that a statute making it unlawful to transport or remove cotton in the seed, in certain counties, after sunset and before sunrise of the succeeding day, was not in conflict with any provision of the State or Federal Constitution. We need not discuss the Michigan cases of *Whitney* v. *Grand Rapids Township Board*, 71 Mich. 234, and *Feek* v. *Bloomingdale Township Board*, 82 Mich. 393 (10 L. R. A. 69), further than to say that they are not authority for a contrary doctrine. Many authorities similar to the above are cited in the opinion of the learned circuit judge.

The order is affirmed.

CARPENTER, C. J., and MCALVAY, BLAIR, and MOORE, JJ., concurred.