### NICHOLS *vs.* THE COMPTROLLER.

1. A *mandamus* lies against an officer of the executive department, to compel the performance of his duty.
2. So, *mandamus* will go to the comptroller of public accounts, to compel the issuance of a warrant on the treasury—where the right to such warrant is clear; and no other remedy is provided.
3. In order to authorise the comptroller to issue his warrant on the treasury, for the amount of a salary, it is not necessary that there should be a special, annual appropriation, by act of the legislature—where there is a general law, fixing the amount of the salary, and prescribing its payment at particular periods.
4. Where commissioners of the State capitol, were authorised to appoint a superintendent, who was allowed a certain amount, as a salary; and the commissioners were limited to three years for the completion of the capitol—held, that they could not continue the services of the superintendent, beyond that period---so as to authorise him to draw a continuance of of his salary, under the statute.

In this case Nichols, the plaintiff in error, petitioned the Circuit Court of Tuskaloosa County, for a rule against G. W. Crabb, the comptroller, reqiring him to shew cause, why a mandamus should not issue, compelling him to grant a warrant on the treasury.

By statute, enacted on the 3d January, 1827, providing for the erection of a State Capitol, commis-

NICHOLS *vs.* THE COMPTROLLER.

sioners were appointed to carry into effect, the requirements and duties therein prescribed. One of the powers conferred upon them, was the appointment of a superintendent of the building aforesaid; and, under that act, the plaintiff in error was appointed.

On the 15th January, 1828, further powers were conferred by statute, upon the commissioners; by the fourth section of which act, the said Nichols was compensated for his services, up to the 1st January, 1828; and by the second section, an annual salary was allowed him, of seventeen hundred and forty-nine dollars, payable quarter yearly, out of any money in the treasury, not otherwise appropriated.

By the fifth section of the act of 1827, the commissioners were required to complete the said capitol within three years.

The petition of Nichols, for the mandamus, was filed at March Term, 1830; and in it he averred, that he had taken upon himself, and regularly discharged the duties of his appointment; and that, his last quarter yearly salary being due and payable on the first day of April, 1830, the commissioners, in pursuance of the before mentioned statutes, issued their certificate to the comptroller, stating that the said quarter yearly salary was due to the said Nichols, for his services as superintendent: but that the comptroller refused to issue a warrant on the treasury, for the said amount of his quarter yearly salary—and he prayed a mandamus.

The Court, on hearing, discharged the rule for the mandamus; and Nichols removed the case into this Court, by writ of error.

*Ellis*, for the plaintiff in error—*Martin, contra.*

NICHOLS *VS.* THE COMPTROLLER.

PER CURIAM.—This is an application on the part of William Nichols, superintendent of the State capitol, for a rule against the comptroller of public accounts, requiring him to show cause why a mandamus should not issue, commanding him to grant a warrant on the State treasury, in favor of said superintendent, for his first quarter's salary, of the present year.

The case has been fully argued, and with ability, and requires much deliberation in arriving at a correct conclusion.

We lay down the proposition as true, that the Circuit Court, being a Court of general common law jurisdiction, has authority to grant writs of mandamus in all cases where a mandamus is the appropriate remedy. And though the three powers of the government are declared by the constitution to be co-ordinate branches, and can not encroach on each other; yet it was never contemplated that the granting of a mandamus, to compel an officer in the executive department to do his duty, would be such an encroachment.

The constitution expressly grants to the Circuit Court, original jurisdiction, in all matters, civil and criminal, not otherwise excepted in the constitution. The issuing of a mandamus, (being authorised by the laws in force at the adoption of the constitution, and which were also adopted by the same instrument,) has, by the constitution itself, become a necessary incident to this original jurisdiction of the Circuit Court.

The next inquiry is, in what cases may a mandamus issue? It is said, by the best authorities, that it may go, in all cases where there is a clear right,

NICHOLS *vs.* THE COMPTROLLER.

and there is no other remedy known to the law.—
That it may go to ministerial or executive officers,
to compel them to do their duty, &c. We held, then,
that it may go to the comptroller of the treasury department, to compel him to grant a warrant on the
treasury, if the right of the party be clear, and there
is no other remedy known to the law.

In the case under consideration, it was contended,
that the architect had another remedy, known to the
law, which was a suit against the State. But, we
apprehend, where the demand is for a quarter's salary, fixed and appropriated by law, and made payable
quarter annually, at the treasury, that a suit could
not be sustained against the State. Because, in all
such cases, it is the duty of the comptroller to grant
his warrant on the treasury — no suit or judgment
against the State, could better ascertain the amount
due, or confer a better right than the appropriation
already made by law. It is conceded that no money
can be drawn from the treasury, but in pursuance of
an appropriation made by law, but it is not necessary, that there should be an act passed annually, for
the appropriation: if there is a general law, fixing the
salary, requiring it to be paid at the treasury, annually or quarter annually, this is sufficient.

If there was a clear right, the act, therefore, giving to the architect of the State capitol, an annual
salary of one thousand seven hundred and forty-nine
dollars, to be paid quarter annually, out of any money in the treasury, not otherwise appropriated; together with the certificate of the commissioners, stating
that the architect had done his duty, and was entitled
to receive his pay, was a sufficient authority for the
comptroller to issue his warrant.

We are therefore inclined to think, that if Nichols has a clear right, the mandamus ought to be granted ; and which is now the only remaining enquiry.

A part of the 5th section of the act of 1827, reads as follows—that the commissioners, aforesaid, shall cause the said State Capitol to be completed at as early a time as practicable, not exceeding three years."

The act went into operation from the time of its passage, and was passed, 3d January, 1827.— It of course expired by its own limitation, on the 3d of last January. The commissioners were appointed for the express purpose of causing the State Capitol to be built and completed—but if this was not done in three years, they had no authority to proceed in the work after that time. With their power, the office and salary of architect, also ceased—unless the limitation was extended to a farther time by some subsequent law, but which law we have been unable to find.— The architect, therefore, had no clear right, after the 3d of January last. The rule is therefore discharged with costs."