STATE *ex rel.* ROBERTS, *Co. Atty.,* v. INDIAN TERRITORY ILLUMINATING OIL CO.

No. 1595. Opinion Filed April 9, 1912.

(123 Pac. 166.)

1. EVIDENCE—Judicial Notice—Private Acts. An act of Congress (Act March 3, 1905, c. 1479, 33 Stat. 1061) approving a lease upon 680,000 acres of land in the Osage Nation, and extending its operation for a period of ten years, for the benefit of the lessee and its sublessees, is a private act, and the courts cannot take judicial notice of it.

2. STATUTES — Construction — "Private Act." Private acts are those which operate only on particular persons and private concerns, in contradistinction to those which regard the whole community (citing 6 Words and Phrases, 5567).

(Syllabus by Ames, C.)

*Error from District Court, Osage County;*
*L. M. Poe, Judge.*

Action by the State, on the relation of L. F. Roberts, County Attorney of Osage County, against the Indian Territory Illuminating Oil Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

*T. J. Leahy, O. T. Smith,* and *L. F. Roberts,* for plaintiff in error.

*John H. Brennan,* for defendant in error.

Opinion by AMES, C. This action was brought by the state, as plaintiff, against the Indian Territory Illuminating Oil Com-

pany, as defendant, to oust the defendant from the state because of various alleged violations of law. It was alleged that the Oil Company was a foreign corporation, and that it was engaged in the business of transporting natural gas by means of pipe lines between various points within the state; also, that it was seeking to make arrangements for the purpose and with the intent of extending its pipe lines over the highways of the state to points outside of the state. It was also alleged that prior to the 16th of November, 1907, the Oil Company acquired, and still owns, a leasehold interest upon 680,000 acres of land in Osage county, and that it is violating the laws of the state by subletting said leasehold interest, and thereby engaging and trading and dealing in real estate. It is also alleged that the Oil Company is engaged, in connection with others, in violating the laws of the state prohibiting agreements in restraint of trade. The answer denies all of the allegations contained in the petition, and particularly that it is engaged in the business of transporting gas by means of pipe lines between points within the state, and denies that it has laid any pipe lines on any highway in the state, but, notwithstanding this denial, alleges that the act of 1907 (Sess. Laws 1907-1908, p. 586; Comp. Laws 1909, p. 1094), regulating the construction of gas pipe lines, is in conflict with the Constitution of the United States. For further defense the answer alleges that the Oil Company, prior to the creation of the state, under and pursuant to express Congressional authority, acquired a lease on the 680,000 acres of land in controversy; that it had expended money under that lease; that the same had become a binding contract; and that its rights had become vested and beyond the power of the state to interfere with, without impairing the obligation of the contract. All of the allegations of the petition were specifically denied, and many other matters are set up in the answer which it is unnecessary to state. The plaintiff demurred to this answer, and the court overruled the demurrer. The defendant thereupon requested the court to extend the demurrer back to the petition. This request was granted, and the court construed the petition as stat-

ing four causes of action, and sustained the demurrer as to three of the causes of action, but overruled it as to the fourth. From that ruling the state brings error, and the briefs discuss the constitutionality of the gas pipe line law in the light of the lease held by the Oil Company and approved by the act of Congress pleaded in the answer. It is not claimed by the state that the court erred in overruling its demurrer to the Oil Company's answer, nor is it argued by the Oil Company that the court erred in overruling its demurrer to the so-called fourth cause of action stated in the petition. The only error assigned is that the court erred in sustaining the demurrer to the first, second, and third causes of action.

Upon the record presented we cannot decide the case upon its merits. In fact, it is conceded at the bar that unless we can take judicial notice of the act of Congress ratifying the Oil Company's lease, and of the contents of the lease itself, we cannot pass upon the questions raised. Indeed, we have grave doubts as to whether the petition states four causes of action, or only one, and, if it states only one, the demurrer, of course, should have been overruled, as the court held that there were allegations in the petition sufficient to state a cause of action (*Emmerson v. Botkin,* 26 Okla. 218, 109 Pac. 531, 29 L. R. A. [N. S.] 786, 138 Am. St. Rep. 953); but it is not necessary to definitely pass upon that point. It is sufficient to say that in our opinion the act of Congress referred to is a private act, and that, therefore, we cannot take judicial notice of it, and we think it is even clearer that we cannot take judicial notice of the terms and conditions of the lease referred to in the act of Congress. The act of Congress was passed on March 3. 1905, and is as follows (33 Stat. 1061):

"That any allotments which may be made of the Osage reservation in Oklahoma Territory shall be made subject to the terms and conditions of the lease herein authorized, the same being a renewal as to a part of the premises covered by a certain lease dated March sixteenth, eighteen hundred and ninety-six, given by the Osage Nation of Indians to Edwin B. Foster and approved by the Secretary of the Interior and now owned by

the Indian Territory Illuminating Oil Company under assign-ments approved by the Secretary of the Interior, which said lease and all subleases thereof duly executed on or before December thirty-first, nineteen hundred and four, or executed after that date based upon contracts made prior thereto, and which have been or shall be approved by the Secretary of the Interior, to the extent of six hundred and eighty thousand acres in the aggregate, are hereby extended for the period of ten years from the sixteenth day of March, nineteen hundred and six, with all the conditions of said original lease except that from and after the sixteenth day of March, nineteen hundred and six, the royalty to be paid on gas shall be one hundred dollars per annum on each gas well, instead of fifty dollars as now provided in said lease, and except that the President of the United States shall determine the amount of royalty to be paid for oil. Said determination shall be evidenced by filing with the Secretary of the Interior on or before December thirty-first, nineteen hundred and five, such determination; and the Secretary of the Interior shall immediately mail to the Indian Territory Illuminating Oil Company and each sublessee a copy thereof."

It is apparent from reading this act that it is not an act of a public nature, that it does not purport to cover the general business of leasing Indian lands, or lands of any particular tribe, but that its sole and only purpose is to operate upon this particular lease.

In *Unity v. Burrage et al.,* 103 U. S. 447, 26 L. Ed. 405, the court quote with approval Blackstone's definition of a private act, as follows:

" 'Special or private acts are rather exceptions than rules, being those which operate only upon particular persons and private concerns, such as the Romans entitled *"senatus decreta,"* in contradistinction to the *"senatus consulta,"* which regarded the whole community, and of these (which are not promulgated with the same notoriety as the former) the judges are not bound to take notice, unless they be formally shown and pleaded. Thus, to show the distinction, the Statute 13 Eliz. c. 10, to prevent spiritual persons from making leases for longer terms than twenty-one years, or their lives, is a public act, being a rule prescribed to the whole body of spiritual persons in the nation; but an act to enable the Bishop of Chester to make a lease to A. B. for sixty years is an exception to this rule. It concerns only the .

parties and the bishop's successors, and is, therefore, a private act.' 1 Wendell's Blackstone, 86.''

Testing the act by this definition, it is apparent that it is a private act. It comes squarely within the latter part, wherein Blackstone says:

"But an act to enable the Bishop of Chester to make a lease 'to A. B. for sixty years is an exception to this rule. It concerns only the parties and the bishop's successors, and is, therefore, a private act.''

This act, being merely a confirmation of a lease to the Oil Company, concerns only the parties thereto, and is not of general application to others.

In *Guthrie Daily Leader v. Cameron*, 3 Okla. 677, 41 Pac. .635, the fifth and sixth paragraphs of the syllabus are as follows:

"A statute relating to persons or things as a class is a general law. One relating to particular persons or things of a class is special. The number of persons upon whom the law shall have any direct effect may be very few by reason of the subject to which it relates, but it must operate equally and uniformly upon all brought within the relations and circumstances for which it provides.

"A statute, in order to avoid a conflict with the prohibition against special legislation, must be general in its application to a class, and all of the class within like circumstances must come within its operations. If it is limited in its application to one person or thing, and is enacted for one purpose and for one person, it then becames special in its subject-matter and operation, and is void.''

In *Kennedy v. Le Moyne*, 188 Ill. 255, 58 N. E. 903, it is said in the syllabus:

"The special act of February 21, 1861 [Priv. Laws 1861, p. 84], in so far as it attempts, by section 5, to repeal the special act of 1853 [Laws 1853, p. 482], authorizing persons holding title in trust for the Protestant Episcopal Church, in Illinois, to convey the same, is void, as in violation of section 23 of article 3 of the Constitution of 1848, which provides that private laws shall not embrace more than one subject, which shall be expressed in the title.''

"If an act affecting an entire church is private, then one affecting merely the parties to this lease must certainly be private."

In *Kelley v. Pratt,* 41 Misc. Rep. 31, 83 N. Y. Supp. 636, the third paragraph of the syllabus is as follows:

"Laws 1864, p. 381, c. 191, entitled 'An act for the relief of the heirs at law of William C. Herring, deceased,' and intended to dispose of land in the city of New York, not described in the statute, devised by William C. Herring to his wife, and which had escheated to the state upon her death intestate, is a private and local act, in violation of Const. art. 3, sec. 16, because failing to describe its purpose in the title."

Many other authorities to the same effect are collected in 6 Words and Phrases, p. 5567, under the title "Private Act." It is, of course, not contended that the court should take judicial notice of this statute if it is held to be a private act, and therefore it is unnecessary to cite authorities holding that the courts do not take judicial notice of private acts. This being a private act, of course, it follows that it cannot be considered by the court in passing on the demurrer, as it is not pleaded in the petition, and, as it is conceded at the bar that the act of Congress and the lease therein referred to are necessary to a determination of the issues of this case, it is apparent that they cannot be now determined. But, even if the act referred to was a public act, the lease therein mentioned is beyond the judicial notice of the court under the authority of *Greenville National Bank v. Evans-Snyder-Buel Co.,* 9 Okla. 353, 60 Pac. 249, in which it was held that an act of Congress extending certain statutes of Arkansas over the Indian Territory was a public act, and that the court would take judicial notice of the contents of that act, but would not take judicial notice of the statutes of Arkansas which were there referred to. It is true that that case upon one point has been overruled in *Frick Co. v. Oats,* 20 Okla. 473, 94 Pac. 682, but not upon the point to which it is here cited. In *St. L. & S. F. Ry. Co. v. Brown, ante,* 122 Pac. 136, and *M., K. & T. Ry. Co. v. Savage, ante,* 122 Pac. 656, we held that the court would not take judicial notice of an order of the county commissioners

exempting the county from the operation of the general law prohibiting animals from running at large. If the court cannot take judicial notice of an order affecting an entire county which is permitted by a public law, then it would seem that it cannot take judicial notice of a private contract which is permitted by such a law.

The reasons for judicial notice do not apply to this lease. The courts take judicial notice of public statutes, because those statutes are easily accessible, because they affect all members of the public who come within their operation, and because it is the primary business of the courts to inform themselves upon this law. The courts likewise take judicial notice of certain matters of general knowledge which it is reasonable to presume that every intelligent person knows, and which can easily be ascertained. But how can the court ascertain whether the lease to the Oil Company which it presents is correct? The state does not admit it. It does not prove itself. It is not a matter susceptible of accurate ascertainment from any information available in the archives of the state, or in the law libraries. For us to hold that we may take judicial notice of this lease, therefore, is to put ourselves in the position of knowing as judges what we do not know as men, and therefore imposes upon us a judicial duty which cannot be discharged without an examination of private papers and the production of witnesses.

Having reached this conclusion, it follows that the merits of the case cannot be here decided, and the case should, therefore, be reversed and remanded for further proceedings in accordance with this opinion.

By the Court: It is so ordered.