(126 So. 162)

**STATE v. CLEMENTS et al.    (3 Div. 915.)**

Supreme Court of Alabama.    Jan. 28, 1930.

516

See Gen. Acts 1927, p. 638.
See, also, 217 Ala. 685, 117 So. 296.

Charlie C. McCall, Atty. Gen., and Merwin T. Koonce, Asst. Atty. Gen., for the State.

Arthur B. Chilton and Hill, Hill, Whiting, Thomas & Rives, all of Montgomery, for appellees.

FOSTER, J. ▮ The question we have on this appeal is whether an appropriation by the Legislature from the general treasury of the state, in satisfaction of a moral obligation to a member of the state militia injured in the line of duty, is a special or private law within the meaning of section 106 of the Constitution, which requires publication of notice containing the substance of the proposed law prior to its introduction in the Legislature. Notice of the substance of this proposed act was not published.

Section 110 of the Constitution defines a general law as one "which applies to the whole State." It also provides that "a special or private law within the meaning of this article is one which applies to an individual, association or corporation." It is not necessary therefore for us to go elsewhere, such as to any text-writers or other authorities not controlled by our Constitution, to define those terms as used in it.

When the act in question is analyzed with the foregoing definitions in view, it seems apparent in the first place that it is embraced in the definition of a general law. It certainly applies to the funds of the whole state, and therefore "to the whole State." When funds are appropriated out of the general treasury, every citizen of the state is more or less interested. The tendency is to deplete the treasury which is needed for the general welfare, and whose funds are supplied by the people at large in the state. Neither can it be denied that such an act applies to an individual. It is specially for his benefit.

We find ourselves at the point where there is before us an act which is general because it applies to the whole state on the one hand, and special or private because it applies to an individual on the other. It is therefore both a general and a special or private act. Section 106 of the Constitution does not require the publication of notice of intention to apply for the passage of an act which is general in nature, nor to one which is both general and special or private, but only of one which is special or private or local. We are not concerned with a local act.

▮▮ It seems apparent that the result is that section 106 should not be construed to apply to an act except one which is merely special or private or local, and not to one which, though of that nature, is also general in some of its aspects. We are here reminded that the Legislature may enact any law in any manner which, either in the manner of its enactment, or in its substance, is not prohibited by the Constitution of the state or nation. It follows that to strike down an act of the Legislature there must be no reasonable doubt but that, either in the manner of its enactment, or in its substance, it violates some clear, precise and particular provision of one or the other of such Constitutions. In this respect, we are also reminded that the provisions of the Constitution are to be strictly construed. This leads us to a consideration of the purpose of section 106. The deci-

sions of this court have uniformly held that its purpose is to give information of its proposed enactment to those who would be affected, so that such of them as may not favor it shall have the opportunity to oppose it. Alford v. Hicks, 142 Ala. 355, 38 So. 752; State v. Allen, 219 Ala. 590, 123 So. 36; Christian v. State, 171 Ala. 52, 54 So. 1001.

Taking such to be its purpose, we inquire who are those affected whose interest or inclination may oppose the enactment. Naturally it would be those whose money is appropriated. It cannot be assumed that any one else would be interested in opposing it. The money belongs to all the people of the state, whose representatives are making the appropriation. If such publication is necessary, where would it be published? Section 106 says, "in the county or counties where the matter or thing to be affected may be situated." It is clear that by such provisions the Constitution did not contemplate that the thing to be affected was money in the general treasury of the state. That may have a technical situs at the seat of government. But the people who would be affected by the law do not largely reside at the seat of government. Then shall it be published in the county where the benefited party resides? We think not, because the people of that county are no more affected by an appropriation than those of any other county.

We have but to examine the acts of the Legislature since the Constitution to find scores of such acts enacted as this one, and apparently the funds so appropriated have been paid. Many of the beneficiaries reside out of the state. The notice should not, of course, be published in the county of their residence. We think we are still further justified in our conclusion by the fact that sections 71 et seq. of the Constitution seem to take care of the general subject of appropria tion. This is a different article from that providing for local and special or private laws. Section 71 provides for the general appropriation act, and what it shall and shall not contain. It then provides that "all other appropriations shall be made by separate bills, each embracing but one subject." We think that the sections referred to dealing specifically with this subject should not be held to be controlled by section 106.

Other states seem to entertain the same idea we have expressed as to the nature of an act such as the one we are dealing with.

The following statement of the law is well supported: "An appropriation made in discharge of a moral obligation resting upon the state must be regarded as being for a public purpose, and within the constitutional powers of the Legislature, and the fact that a private person may receive the benefit of such an appropriation does not constitute the act of appropriation a private one." Fairfield v. Huntington, 23 Ariz. 528, 205 P. 814,

817, 22 A. L. R. 1438; Woodall v. Darst, 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, 44 L. R. A. (N. S.) 83, Ann. Cas. 1914B, 1278; State v. Carter, 30 Wyo. 22, 215 P. 477, 28 A. L. R. 1089; 25 R. C. L. 402.

It is further observed in the case of Fairfield v. Huntington, supra: "And the fact that the law was passed for the benefit of only one individual does not make it special legislation, since it was enacted to satisfy an obligation resting upon all the people who constitute the state. The discharge of such an obligation is merely the performance of a public act, and an appropriation for it is not expending the public funds for a private purpose."

The foregoing authorities also recognize the fact that under the circumstances of this appropriation there was a moral obligation, and that "it would be difficult to enact a law applying to the various situations under which the state's moral obligations might arise." Woodall v. Darst, supra.

We conclude that the act in question is not subject to the constitutional attack which was made upon it in this case.

The judgment of the circuit court conformed to our views, and it is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

THOMAS and BROWN, JJ., dissent.

SAYRE, J., not sitting.

THOMAS, J. (dissenting). This is the second appeal (217 Ala. 685, 117 So. 296) touching the same transaction and deals with a public special appropriation that was designated on first appeal as "a special."

The ruling from which the appeal is taken, among other things, recites: "On account of the adverse ruling of the Court heretofore made and entered on the 23d day of February, 1929, sustaining the defendants' demurrers to the complaint, the plaintiff takes a nonsuit with leave to review said rulings of this Court in the Supreme Court of Alabama."

The question of law is presented by the complaint setting forth, as it does, the statute and the facts, and does not advert to the former judgment discussed in State v. Clements, 217 Ala. 685, 117 So. 296; hence we observe that this record does not show a collateral attack upon the judgment of any court. For Direct and Collateral Attacks on Judgments, see 14 L. C. L. §§ 311, 312, pp. 838, 839.

The class of acts as that before us must be shown beyond a reasonable doubt to offend organic law, in order to justify the court in a judgment of nullification of such enactments of the general assembly. Ex parte Selma &

Gulf R. Co., 45 Ala. 696, 728, 6 Am. Rep. 722; Ward· v. McDonald, 201 Ala. 237, 243, 77 So. 827. And if "any doubt exists" with respect to its constitutionality, the practical construction heretofore given it ought to have great weight in determining the question. Cohens v. Virginia, 6 Wheat. 264, 5 L. Ed. 257; Bank of United States v. Halstead, 10 Wheat. 51, 62, 6 L. Ed. 264; Ogden v. Saunders, 12 Wheat. 214, 290, 6 L. Ed. 606; Pennoyer v. McConnaughy, 140 U. S. 23, 11 S. Ct. 699, 35 L. Ed. 363; Cooley's Const. L. 67.

The rule in this state is well stated in State ex rel. Clarke v. Carter, 174 Ala. 266, 279, 56 So. 974, and the uniform legislative interpretation of doubtful constitutional provisions, running through many years, is of weighty consideration with the courts. Parke v. Bradley, State Treasurer, 204 Ala. 455, 459, 86 So. 28: Ex parte Hardy, 68 Ala. 303; Moog v. Randolph, 77 Ala. 597; Farrior v. N. E. M. Sec. Co., 88 Ala. 275, 7 So. 200; Jones v. McDade, 200 Ala. 230, 75 So. 988.

In the absence of direct decisions by this court to the contrary, under the definitions contained in section 110 of the Constitution, the rule of contemporaneous constructions of the several departments of state government should be carefully considered, before there is an attempt at classification of the instant act appropriating the moneys of the state to an individual injured in public service.

It is evident that the Legislature in the enactment, the secretary of state in the publication of said act in General Acts 1927, p. 638, the auditor in the issuance, and the treasurer in the payment of the warrant pursuant to the enactment, regarded and construed this and other relief bills and acts as general laws. In support of this classification, it is urged that the appropriation was out of the general and otherwise unappropriated fund of the state, by way of compensation for injury to a member of the National Guard of Alabama while on duty. However, if the Constitution is plain and unambiguous, there is no field of operation for the rule to which we have adverted.

The preamble to the act and its passage was a recognition by the Legislature of the duty to compensate for injury inflicted to the individual named, and under such circumstances as those, it was a "general act" in the sense of the appropriation of funds, but "special" as to the worthy object of the compensation. The act was not for relief of all members of the National Guard similarly situated or injured. A general law to cover such injuries to members of the National Guard may well have been passed by the Legislature. The compensation was in recognition of a moral obligation of the state to Clements; the act was within the power of legislation, had the required notice been first given.

What is the true construction of the concluding words of section 110 of the Constitution (in connection with the requirements of section 106 of the Constitution),· and its effect upon the Act of September 6, 1927, when all reasonable doubt that may be resolved in favor of the enactment is indulged to support it (State v. Pitts, 160 Ala. 133, 49 So. 441, 686, 135 Am. St. Rep. 79), and when the rule of contemporaneous constructions, if it may be given such act, is duly observed?

The importance of the question for decision, and the fact that the act is public in the sense of appropriation of public funds by the state, and special in its application in the payment to a named individual, warrants an examination of the general authorities. A "local or special" statute is held limited in the object to which it applies, and "general" if it applies to all the cities in the state, and is neither local nor special in the creation of a board of police. People v. Wright, 70 Ill. 388; Allen v. Hirsch, 8 Or. 412, 423, wherein it was held private acts relate to a particular class or person or place, and not common to the whole community. State v. Chambers, 93 N. C. 600, 602; People v. Board of Sup'rs of Chautauqua County, 43 N. Y. 10, 17; Sasser v. Martin, 101 Ga. 447, 29 S. E. 278; Conner v. Mayor, etc., of City of New York, 5 N. Y. 285; Phillips v. City of N. Y., 1 Hilt. (N. Y.) 483, 489; 6 Words and Phrases, page 5568.

In State ex rel. Roberts, County Atty., v. Indian Territory Illuminating Oil Co., 32 Okl. 607, 123 P. 166, 167, the authorities are collected and discussed as we shall indicate. The act construed by the Supreme Court was an incorporation act of the designated railroad company, and to make valid the election on question of bonds issued by the county of Marion in aid thereof; and that in Oklahoma was an act to approve an oil lease in Osage Nation, and held a private act. Mr. Justice Ames said:

"In Unity v. Burrage et al., 103 U. S. 447, 26 L. Ed. 405, the court quote with approval Blackstone's definition of a private act, as follows: ' "Special or private acts are rather exceptions than rules, being those which operate only upon particular persons and private concerns, such as the Romans entitled 'senatus decreta,' in contradistinction to' the 'senatus consulta,' which regarded the whole community, and of these (which are not promulgated with the same notoriety as the former) the judges are not bound to take notice, unless they be formally shown and pleaded. Thus, to show the distinction, the Statute 13 Eliz. c. 10, *to prevent spiritual persons from making leases for longer terms than 21 years, or their lives, is a public act, being a rule prescribed to the whole body of spiritual persons in the Nation; but an act to enable the Bishop of Chester to make a lease to A. B. for 60 years is an exception to this rule. It concerns* only the parties and the bishop's successors, and is, therefore, a private act." [Italics supplied for easy refer-

ence.] 1 Wendell's Blackstone, 86.' Testing the act by this definition, it is apparent that it is a private act. It comes squarely within the latter part, wherein Blackstone says: 'But an act to enable the Bishop of Chester to make a lease to A. B. for sixty years is an exception to this rule. It concerns only the parties and the bishop's successors, and is, therefore, a private act.' This act, being merely a confirmation of a lease to the Oil Company, concerns only the parties thereto, and is not of general application to others.

"In Guthrie Daily Leader v. Cameron, 3 Okl. 677, 41 P. 635, the fifth and sixth paragraphs of the syllabus are as follows:

" 'A statute relating to persons or things as a class is a general law. One relating to particular persons or things of a class is special. The number of persons upon whom the law shall have any direct effect may be very few by reason of the subject to which it relates, but it must operate equally and uniformly upon all brought within the relations and circumstances for which it provides.

" 'A statute, in order to avoid a conflict with the prohibition against special legislation, must be general in its application to a class, and all of the class within like circumstances must come within its operations. If it is limited in its application to one person or thing, and is enacted for one purpose and for one person, it then becomes special in its subject-matter and operation, and is void.'

"In Kennedy v. Le Moyne, 188 Ill. 255, 58 N. E. 903, it is said in the syllabus: 'The special act of February 21, 1861 [Priv. Laws 1861, p. 84], in so far as it attempts, by section 5, to repeal the special act of 1853 [Laws 1853, p. 482], authorizing persons holding title in trust for the Protestant Episcopal Church, in Illinois to convey the same, is void, as in violation of section 23 of article 3 of the Constitution of 1848, which provides that private laws shall not embrace more than one subject, which shall be expressed in the title.' If an act affecting an entire church is private, then one affecting merely the parties to this lease must certainly be private. In Kelly v. Pratt, 41 Misc. Rep. 31, 83 N. Y. S. 636, the third paragraph of the syllabus is as follows: 'Laws 1864, p. 381, c. 191, entitled "An act for the relief of the heirs at law of William C. Herring, deceased," and intended to dispose of land in the city of New York, not described in the statute, devised by William C. Herring to his wife, and which had escheated to the state upon her death intestate, is a private and local act, in violation of Const. art. 3, § 16, because failing to describe its purpose in the title.' Many other authorities to the same effect are collected in 6 Words and Phrases, p. 5567, under the title 'Private Act.' "

In Anderson v. Board of Com'rs of Cloud County, 77 Kan. 721, 95 P. 583, 586, 587, Mr. Justice Porter said:

"Commenting upon the evils of special legislation, Mr. Samuel P. Orth, in the Atlantic Monthly for January, 1906 (volume 97, p. 69), uses this language: 'The Romans recognized the distinction between private bills and laws. To them special laws were privilegia or constitutionis privilegia. In England they used to say, when a public bill was passed: "Le roi le veut"—it is the King's wish; and of a private measure: "Soit fait comme il est desire" —let it be granted as prayed for. Here is the gist of the matter: A public law is a measure that affects the welfare of the state as a unit; a private law is one that provides an exception to the public rule. The one is an answer to a public need, the other an answer to a private prayer. When it acts upon a public bill, a Legislature legislates; when it acts upon a private bill, it adjudicates. It passes from the function of a lawmaker to that of a judge. It is transformed from a tribune of the people into a justice shop for the seeker after special privilege.' "

He then quotes the Constitution to the effect that, "All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable no special law shall be enacted," and makes the observation that constitutionality vel non was for the courts. Laws of Kansas 1905, p. 907, c. 543, § 1. The justice then says of the provisions of the Kansas Constitution and Legislature that:

"The Legislature no longer have the power of finally determining, either that a proposed law will have uniform operation throughout the state, or that a local condition exists which requires a special law. * * *

"It still recognizes the necessity for some special legislation. It is still a limitation, and not a prohibition. Without some special laws state governments could not exist. An appropriation law, however general in its terms, is necessarily special. A law changing the boundaries of a judicial district is a special law, but one which may be required at any time, and to enact a general law upon the subject, might accomplish more evil than good. Again, conditions sometimes arise, and emergencies are created, which require the enactment of special legislation. The mere mention of the subject in the Constitution is a recognition of this necessity. * * *

"The Constitution expressly forbids special laws where a general law can be made to apply. When a special law is passed, therefore, the Legislature necessarily determines, in the first instance, that a general law cannot be made to apply. But their determination is not final. There is, of course, a presumption that public officers have discharged their duties properly, and every act of the Legislature is presumed to be valid until there is a judicial determination to the contrary. But when a special law has been enacted, and its validity is assailed in the courts, the question

is to be finally determined by the courts as a judicial question, uncontrolled by the determination of the Legislature. The courts must determine the question, as other purely judicial questions are determined, by reference to the nature of the subject, not upon proof of facts or conditions, but upon the theory that judicial notice supplies the proof of what courts are bound to know, and that courts must be aware of those things which are within the common knowledge, observation, and experience of men generally."

The statute there dealt with and held local was one providing for the erection and removal of bridges across a river in a designated county, for the issue of bonds to meet the expense.

In New York Board of Fire Underwriters v. Metropolitan Lloyds of New York City, 11 Misc. Rep. 646, 33 N. Y. S. 547, it was held a public act was that which authorized an assessment for a fire patrol, and sought to levy the same upon those engaged in the insurance business. Mr. Justice Beekman attempts to define "public acts" and "private acts" as follows:

"It is, at times, difficult to determine in which category a particular statute falls. Abbott, in his Law Dictionary, defines a private act to be 'an enactment which does not affect the public at large, but bears upon individuals only; such as an act settling the title to or authorizing the sale of a particular parcel of land; *an act allowing a person's claim against government and directing payment.*' Sedgwick, in his work on Statutory Construction, says: 'In this country the disposition has been, on the whole, to enlarge the limits of the class of public acts, and to bring within it all enactments of a general character, *or which in any way affect the community at large.*' This disposition is illustrated by the remark of the chancellor in the case of Bank v. Smedes, 3 Cow. [N. Y.] 662, in which he says that he is not prepared to admit that 'a law incorporating a bank, without declaring the law to be a public statute, is a private act, which must be recited in every suit against the corporation. These institutions,' he remarks, 'are public in their nature and character, and their operations affect the whole community.' It is also a recognized principle that a private act, which contains some provisions of a public nature, is pro tanto a public act. Now, in the case at bar, while the act in question is entitled 'An act to incorporate the New York Board of Fire Underwriters,' and, as its title imports, confers corporate capacity upon that board, with functions largely of a private nature, certain powers are also vested in the corporation which directly affect and concern the interests of the public at large. These powers relate to the organization and operations of the fire patrol in this city."

So much for general authorities and attempted definitions. We must look to our decisions under the Alabama Constitution for guidance and analogy: The establishment of police commissions for cities of certain population within counties of a certain population, and there was but one city of that class held a local statute, State ex rel. Saltsman v. Weakley, 153 Ala. 648, 45 So. 175; the state-wide prohibition law, retaining statu quo in some counties and changing in other counties was held a general law, State ex rel. v. Pitts, 160 Ala. 133, 49 So. 441, 686, 135 Am. St. Rep. 79; for organizing juries in a given county, held local, Sellers v. State, 162 Ala. 35, 50 So. 340; a statute creating a new circuit was held a local law, State ex rel. Attorney Gen. v. Sayre, 142 Ala. 641, 39 So. 240, 4 Ann. Cas. 656.

The terms "general and public laws" are respectively defined, as those that operate throughout the state alike upon all the people or all of a class; and any law affecting the public within the limits of county, or community would be public, though not a general law within the meaning of the Constitution. Holt v. City of Birmingham, 111 Ala. 369, 373, 19 So. 735; Wallace v. Board of Revenue, 140 Ala. 491, 37 So. 321; State v. Thompson, 142 Ala. 98, 38 So. 679. And in Gaston, Judge v. O'Neal, 145 Ala. 484, 487, 41 So. 742, 743, a "special law" was defined as that not general, and which was inconsistent with the uniform plan of county license taxation the general revenue law (of 1903) was designed to adopt.

The Chief Justice said:

"The definition of a general law, a local law, and a special or private law found in section 110 of the Constitution of 1901 merely states the meaning of those terms as they are employed in the article of the Constitution in which the section is located, and we are not thereby precluded from holding that upon a proper construction of the revenue act the Legislature meant by 'special laws' any laws that were not general and which were inconsistent with the uniform plan for county license taxation the general revenue law of 1903 was designed to adopt. Although the charter of Montgomery was local, in the sense that it applied to a municipality, the exemption therein secured to persons taking out a privilege license from the city was, in a broad and just sense, special and exceptional, and hence inconsistent with that provision of the revenue law of 1903."

There is an analogy to be found in the later decisions and in the constructions of section 110 of the Constitution contained in Birmingham Elec. Co. v. Harry, 215 Ala. 458, 111 So. 41; Mobile County v. Byrne, 218 Ala. 5, 117 So. 83; Henry, County Treas. v. State ex rel. Hartsfield, 218 Ala. 71, 117 So. 626; Carnley v. Moore, 218 Ala. 274, 276, 118 So. 409; In re Opinions of the Justices, 215 Ala. 524, 111

So. 312, touching the School Appropriation Act, it was held that the act distributing money to counties for schools, though not uniform as to amount of money apportioned to the several counties, was a general law; and In re Opinion of the Justices, on the Constitutional Amendment as to Mobile County, 216 Ala. 469, 113 So. 584, the act was held local, as applying to only one county. In Alabama State Bridge Corp. v. Smith, 217 Ala. 311, 116 So. 695, it was held to be to a general and public purpose, and the result is a general law, as defined by section 110 of the Constitution; and Henry, County Treas., v. State ex rel. Hartsfield, 218 Ala. 71, 117 So. 626, holding the act fixing sheriffs' salaries in counties having over 200,000 population, though effective only in Jefferson county, was a general law, and validly enacted without notice. See, also, on last-stated question, State ex rel. Collman v. Pitts, Probate Judge, 160 Ala. 133, 49 So. 441, 686, 135 Am. St. Rep. 79; Alabama State Bridge Corp. v. Smith, supra; and In re Opinions of Justices (In re School Appropriation Act), supra.

And notwithstanding the contemporaneous construction placed upon the character of such enactment, we are persuaded that the instant statute is one that applied to an individual in the appropriation of public funds, and was within the requirements, as to publication and notice, contained in sections 110 and 106 of the Constitution, and other sections of the Constitution. State v. Allen, 219 Ala. 590, 123 So. 36.

We prefer not to attempt comprehensive definitions of the several classes or characters of legislative enactments. Each act must stand upon its provisions and classification necessary under our rule of Constitution and statutory constructions.

It may be well to add that the effect of our decisions is that if a law has a bona fide application to the entire state (Stone v. State, 20 Ala. App. 69, 101 So. 58, certiorari denied 211 Ala. 601, 101 So. 62), as to some of the chief features of that enactment, it is a general and not a local law, State v. Pitts, supra, and the classification employed, if such there be, is reasonable and in good faith, Vaughan v. State, 212 Ala. 258, 102 So. 222; and that court will not construe as local if the enactment is so framed as to be reasonably susceptible of interpretation as a general law, Reynolds v. Collier, 204 Ala. 38, 85 So. 465. We have illustrated by the decisions that an act imposing a library maintenance fee as costs in counties of 200,000 population or more was held general under the Constitution, in Birmingham Elec. Co. v. Harry, 21 Ala. App. 483, 111 So. 39, reviewed on certiorari by this court in 215 Ala. 458, 111 So. 41, and declared a local law; and the act distributing money to counties for schools *is general,*

though not uniform as to amount of money appropriated or apportioned to the several counties, In re Opinions of the Justices, 215 Ala. 524, 111 So. 312; and the general appropriation law for payment of all obligations of the state was held not to extend to payment of contract compensation rendered by an attorney to the Governor, State ex rel. Troy v. Smith, 187 Ala. 411, 65 So. 942.

Of the questions for decision and the purposes of our constitutional safeguards, there is no need for further illustration. We may note the well-known origin of legislative appropriations, as follows (4 C. J. p. 1460, note 67, [b]):

"Legislative appropriations are the outgrowth of the long struggle in England against royal prerogative. By degrees the power of the crown to levy taxes was restrained and abolished, but it was found that, so long as the crown might at its own discretion disburse the revenue, the reservation to the people through parliament of the power to raise revenues was not a complete safeguard. Efforts to control the crown in disbursement as well as in the collection of revenues culminated with the revolution in 1688, and since then the crown may only disburse moneys in pursuance of appropriations made by act of parliament. * * * When our governments, state and federal, came to be established, the requirement of legislative appropriations was adopted from England, along with many provisions having in view the preservation of the liberties of the people," etc.

The provisions of our Constitution are somewhat more strict and more specific than the federal Constitution or the Constitutions of other states.

Adverting to our Constitution in its requirements of appropriation bills, it is provided: (1) That "general appropriations" shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative, and judicial departments of the state, (2) for interest on the public debt, and (3) for the public schools; (4) and all other appropriations shall be made by separate bills, each embracing but one subject, section 71 Const.; (5) appropriations to charitable or educational institutions may be made to those institutions under the control of the state, section 73, Const. The constructions thereof are that special appropriation bills for local schools of a city from license tax are required to be by separate bills, Woolf v. Taylor, 98 Ala. 254, 13 So. 688; State ex rel. State Tax Comm. v. Smith, 188 Ala. 432, 66 So. 61; and section 71 of the Constitution applies only to legislative appropriations from the state treasury, and not to taxes it delegates to the county the authority to levy, State v. Street, 117 Ala. 203, 23 So. 807.

There is analogy to be found in the decision of State ex rel. Troy v. Smith, as Auditor, 187 Ala. 411, 65 So. 942, holding the "general appropriations" under Acts of 1911, p. 146, Const. § 71, appropriating money for the payment of all obligations of the State not specially enumerated, did not appropriate money for the payment of specific contract compensation for special services rendered by an attorney at law (not a state official in the general sense) to the Governor. See State ex rel. State Tax Com. v. Smith, supra.

It may be that general laws or acts creating a fixed obligation of the state, and made, in some instances, to operate as continuing appropriations (as in Nichols v. Comptroller, 4 Stew. & P. 154; Reynolds v. Taylor, 43 Ala. 420), present an antithesis to local or private acts, so frequently dealt with by the Legislature and in our decisions. State v. Moore, 50 Neb. 88, 69 N. W. 373, 61 Am. St. Rep. 539, 547; 4 C. J. p. 1458 et seq.

The instant act is entirely different in nature, scope, and purpose from that creating the bridge corporation and providing for payment of interest out of moneys remaining as surplus in the treasury of the state (Alabama State Bridge Corp. v. Smith, 217 Ala. 315, 316, 116 So. 695), which was held not violative of sections 72 and 110 of the Constitution. It is there observed of the public character of the act and payment of interest that:

"The bill in its original form would, and the act in its present shape does, invoke and witness the legislative will to provide for the execution of a general public purpose, and the result is a general law as defined by section 110 of the Constitution. * * *

"The moneys remaining as surplus, if any, will be in the treasury of the state, and such surplus, to the extent necessary to pay interest on the bonds authorized, is by the act appropriated to the payment of interest on the bridge bonds, and the provision is that payments shall be made on the requisition of the bridge corporation, approved by the Governor, and by warrants drawn by the state auditor. In all this we find no violation of section 72 of the Constitution." Alabama State Bridge Corp. v. Smith, 217 Ala. 315, 316, 116 So. 695, 698.

We find no authority in these decisions for the instant appropriation without publication as required by section 106 under the definitions of "general laws," "local laws," and "special and private laws"—within the meaning of article 4 and contained in section 110 of the Constitution.

We cannot now consider matters of defense that were anticipated in the bill that was before us on the first appeal. And we therefore make no observations on the question of res adjudicata (Crowson v. Cody, 215 Ala. 150, 152, 153, 110 So. 46; East v. Saks, 214 Ala. 58, 106 So. 185; Boon v. Riley, 171 Ala. 657, 54 So. 997; Terrell v. Nelson, 199 Ala. 436, 74 So. 929; McNeil v. Ritter Co., 213 Ala. 24, 104 So. 230), as was done on the former pleading and facts before the court in 217 Ala. 685, 117 So. 296. These matters and questions have been carefully avoided by the pleader for the state in drawing the complaint.

We are now confined to the ruling sustaining the demurrer to the complaint that caused the nonsuit. In this ruling there was error, as I have indicated, is the opinion of the writer; and Mr. Justice BROWN likewise dissents and states his views as follows:

BROWN, J. (dissenting). It is not doubted that the Legislature has power to appropriate money out of the state treasury in discharge of a legal or moral obligation of the state, though the duty or obligation runs to a private individual or corporation; but that is not the question presented on this record.

The question here is: Is the act of the Legislature here under consideration a *special* law as contradistinguished from a *general* law, within the meaning of section 106 of the Constitution, which provides that: *"No special,* private or local law shall be passed *on any subject* not enumerated in section 104 of the Constitution * * * *unless notice of the intention to apply therefor shall have been published,* without cost to the State, in the county or counties *where the matter or thing to be affected may be situated,"* etc. (Italics supplied.)

While it must be conceded that the act in question is a public act because it affects the public treasury, nevertheless it is too clear for argument that it is a *special act,* making a *special appropriation* to a *special individual* to meet a *special moral obligation* of the state.

The judicial decisions on the question, wherever it has arisen, with a single exception, agree in holding such acts special laws. Mount v. State, 90 Ind. 29, 46 Am. Rep. 192; Merchants' Union Barb Wire Co. v. Brown, 64 Iowa, 275, 20 N. W. 434, 435; McSurely v. McGrew, 140 Iowa, 168, 118 N. W. 415, 420, 132 Am. St. Rep. 248; Sandel v. State, 115 S. C. 168, 104 S. E. 567, 13 A. L. R. 1268; Woodall v. Darst, 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, 44 L. R. A. (N. S.) 83, Ann. Cas. 1914B, 1278; Fairfield v. Huntington, 23 Ariz. 528, 205 P. 814, 22 A. L. R. 1438; State of Wyoming ex rel. McPherren v. Vincent Carter, State Auditor, 30 Wyo. 22, 215 P. 477, 28 A. L. R. 1089.

In Mount v. State, supra, it was observed: "The granting of relief to individual claimants is not within the provision of our Constitution, which prohibits the enactment of special laws. Each claim stands on its own

merits; a general law could not be made applicable, and when general laws are not applicable special ones may be enacted. * * * A law requiring reimbursement to an officer * * * is an act granting special relief in a particular case."

In the case of Merchants' Union Barb Wire Co. v. Brown, supra, it appears that the Legislature had appropriated $5,000 to aid in the litigation of certain suits pending. The court, speaking of the constitutional provision similar to ours prohibiting special legislation in certain cases, said:

"We think the subject-matter of the legislation in question is such that a general law cannot be made applicable. The act in question is what, in legislative parlance, is denominated an appropriation act. Such acts are, in their very natural (nature) local and special, as distinguished from general laws. There may be a question whether, under the constitution, there is any legislative power to make the appropriation, but it seems to us there can be no question, if any appropriation is authorized, or rather not forbidden, by the constitution, it must, of necessity, be made by a special act of the Legislature."

In McSurely v. McGrew, supra, the court said:

"Again it is argued that it confers a special benefit or immunity upon a particular individual, and is therefore invalid. This proposition is fully answered in State v. Squires, 26 Iowa, 344. It is not to be assumed that there were other county treasurers in the same situation as McGrew. A general law could not, therefore, be made applicable, for the situation disclosed a novel and most unusual state of facts. The act in question is not bad because special in character. A law, making an appropriation to a private individual or corporation, is not and cannot be made general, and yet it is good. Merchants' Union Barb Wire Co. v. Brown, supra."

In Holt v. City of Birmingham, 111 Ala. 369, 19 So. 735, 736, it was observed:

"The terms 'general' and 'public' law are frequently used synonymously, but they are not the equivalent of each other. Every general law is necessarily a public law, but every public law, as defined, is not a general law. A general law, as used in our consti-

tution, is a law which operates throughout the state, alike upon all the people or all of a class. The law authorizing the removal or the disabilities of coverture, or of infancy by the courts, are general laws, though applying only to married women and to minors. Any law affecting the public within the limits of the county or community would be a public law, though not a general law, within the meaning of our constitution. The effect of a statute, more than its wording or phraseology, must determine its character as a public, general, special, or local statute."

Section 110 of the Constitution defines a special or private law within the meaning of the Constitution as "one which *applies to an individual, association or corporation,*" as contradistinguished from a law that *applies* to all, or to all of a class. (Italics applied.) 25 R. C. L. 813, § 65.

I find nothing in the provisions of section 71 of the Constitution that, "All other appropriations shall be made by separate bills, each embracing but one subject," to save the act in question from being declared a special law. While it may be conceded that bills making appropriations to public institutions maintained by the state would be general laws, yet where the appropriation is limited to some special private individual, association, or corporation, I see no escape from the conclusion that it is a special law, though it may be a public one.

Nor is there anything in the contention that it is impossible to comply with the provisions of section 106, which provides that notice of the intention to apply for the passage of a special law "shall have been published, without cost to the state, in the county or counties *where the matter or thing to be affected may be situated.*" (Italics supplied.)

The matter or thing, of public interest, to be affected is the state treasury situated in the county of Montgomery, where the public officials who are supposed to guard the public treasury are required to be, and if the subject of the proposed appropriation bill is unwarranted, protest against its passage may be made and brought to the special attention of the members of the Legislature.

For these reasons I cannot concur in the majority opinion, and therefore respectfully dissent.